OPINION
{¶ 1} Defendant, Kier A. Holeman, appeals from a judgment for Plaintiff, Stephanie Kanistros, on her breach of contract claim.
 {¶ 2} Kanistros commenced the action on her claim in the Small Claims Division of the Oakwood Municipal Court. After a hearing, the court made the following findings of fact:
 {¶ 3} "1. Plaintiff is the owner of a duplex at 351/353 Triangle Avenue in the City of Oakwood. On or about November 17, 2003, after viewing Unit 353, which was vacant, Defendant told Plaintiff that he definitely wanted to rent the unit from her on her terms. She had already told him what the monthly rent would be, that the lease would be for one year with month-to-month thereafter, and other terms. On November 25, 2003, Defendant agreed and gave Plaintiff his check for the $875.00 security deposit, (Exhibit A). She did not deposit the check at the time.
 {¶ 4} "2. Plaintiff did not have her standard typewritten lease (Exhibit B) with her when she received the security deposit. Defendant said he would be back in town on November 29, and that he would then pick up the lease, and sign it when he returned.
 {¶ 5} "3. On November 30, Defendant picked up the lease, and again said he would sign it. Defendant never denied this evidence. In reliance on these representations, and believing there was a meeting of the minds, Plaintiff stopped advertising, removed the sign in her yard, turned away five rental prospects and planned to deposit the Defendant's check when she received the signed lease. Defendant never denied that he had agreed to sign her lease; he never testified that [he] had any issue with it.
 {¶ 6} "4. On December 9, Plaintiff received a letter from Defendant (Exhibit C) stating that he would not sign her one year lease because `my wife and I have decided to try and make our marriage work.' The letter infers that Defendant knew his reversal would put her in a difficult position and cause Plaintiff some loss: `I appreciate the position this puts you in and I apologize for that.'
 {¶ 7} "5. Believing Defendant had breached their agreement, Plaintiff immediately deposited the $875 check. However, Defendant had stopped payment on it and it was not honored by his bank. Plaintiff was charged a $10.00 fee by her bank.
 {¶ 8} "6. Plaintiff immediately put a `for rent' sign back in the yard, but did not newspaper advertise until after the holidays, because she knew it was highly unlikely that anyone would move during the holidays. She was able to lease the unit effective February 1, 2004.
 {¶ 9} "7. On January 26, 2004, Plaintiff sent a letter to Defendant demanding that, by February 4, 2004, Defendant pay her rent from December 10, 2003 through January 31, 2004, rental ad costs, and utility cost for the period the unit was vacant, plus the security deposit (Exhibit D). Defendant received the letter.
 {¶ 10} "8. When Defendant failed to pay, Plaintiff filed this action on February 9, 2004." (Decision and Judgment Entry, pp. 1-2.)
 {¶ 11} The court found that the parties entered into an oral agreement to lease the property for one year, that Defendant Holeman breached the agreement, and that Holeman is barred by the doctrine of promissory estoppel from interposing the statute of frauds requirement of a written agreement because his promise to sign a written lease agreement, coupled with the deposit he paid, "was sufficiently firm to induce Plaintiff to discontinue efforts to lease the premises." Id. at p. 3. The court awarded judgment for Kanistros and against Holeman for $1,085.00, consisting of $200.00 for utility costs for one month, $875.00 for one month's rent, and $10.00 for a returned check fee.
 {¶ 12} Holeman filed a timely notice of appeal. He presents two assignments of error.
 {¶ 13} First assignment of error
 {¶ 14} "The trial court erred as a matter of law by not applying the statute of frauds and denying appellee's claim."
 {¶ 15} A tenancy is possession or occupancy of land by right or title, especially under a lease, which is a contract by which an owner or rightful possessor of real property conveys the right to use and occupy the property in exchange for consideration, usually rent. Black's Law Dictionary, Seventh Ed. A landlord who prosecutes a breach of contract claim against a tenant for violation of the terms of a lease agreement bears the burden of proof with respect to three propositions, in addition to the grounds for the breach alleged. First, that a contract was formed. Second, if the term of the lease is for one year or more, that the agreement was reduced to writing and signed by the tenant. R.C.1335.04, R.C. 1335.05. Third, that the landlord gave the tenant a right of possession and that the tenant exercised his right under the lease and entered into possession of the property. Hartman v. Garden WoodsApartments (Oct. 25, 1995), Montgomery App. No. 15228; Turetsky v. Miller
(Aug. 19, 1996), Fayette App. No. CA96-03-0005.
 {¶ 16} The trial court found that the parties entered into an oral lease agreement, and that is undisputed. However, and per R.C. 1335.04
and R.C. 1335.05, Ohio's statute of frauds provisions, a lease agreement must be in writing and signed by the party to be bound in order to be actionable on a claim of breach. Defendant-Appellant Holeman argues that the trial court erred when it waived the requirements of a writing imposed by Ohio's Statute of Frauds provisions. We do not agree.
 {¶ 17} The court relied on Section 217(A) of the Restatement of Contracts (Second), which provides:
 {¶ 18} "[`](1) A promise which the promissor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce the action or forbearance is enforceable notwithstanding the Statute of Frauds if injustice can be avoided only by enforcement of the promise. The remedy granted for breach is to be limited as justice requires.
 {¶ 19} "[`](2) In determining whether injustice can be avoided only by enforcement of the promise, the following circumstances are significant: (a) the availability and adequacy of other remedies, particularly cancellation and restitution; (b) the definite and substantial character of the action or forbearance in relation to the remedy sought; (c) the extent to which the action or forbearance corroborates evidence of the making and terms of the promise, or the making and terms are otherwise established by clear and convincing evidence; (d) the reasonableness of the action or forbearance; (e) the extent to which the action or forbearance was foreseeable by the promissor.[`]"
 {¶ 20} Based on the finding of facts it made, and the record before it, we find no error or abuse of discretion in the court's reliance on and application of the Restatement provisions to relieve Kanistros of the written agreement requirements imposed by the Statute of Frauds. Nevertheless, no breach of a tenancy agreement is enforceable because, as is also undisputed, Holeman never took possession of the premises.Hartman; Turetsky.
 {¶ 21} The additional requirement that the tenant actually exercise his right of possession conveyed by the landlord is, like other features of the law of real property, rooted in ancient practice. In this instance, the practice is livery of seisin.
 {¶ 22} "Livery" is the delivery of the possession of real property. "Livery of seisin" was "the ceremony by which a grantor conveyed land to a grantee. Livery of seisin involved either (1) going on the land and having the grantor symbolically deliver possession of the land to the grantee by handing over a twig, a clod of dirt, or a piece of turf (called livery in deed) or (2) going within sight of the land and having the grantor tell the grantee that possession was being given, followed by the grantee's entered the land (called livery in law)." Black's Law Dictionary, Seventh Ed.
 {¶ 23} Commentators have written:
 {¶ 24} "We may now pause to wonder how transfer of these potentially infinite interests was accomplished. Without a modern system of land records, it would be desirable that the transfer be effected with sufficient ceremony not only to make itself indelibly in the memories of the participants, but also to give notice to interested persons such as the mesne lord above the transferor. The central idea was to make rituallivery (meaning `delivery,' from the Old French livrer) of seisin (meaning, roughly `possession,' from the Old French saisir or seisir). The transferor and transferee would go to the land to be transferred, and the transferor would then hand to the transferee a lump of soil or a twig from a tree — all the while intoning the appropriate words of grant, together with the magical words `and his heirs' if the interest transferred was to be a potentially infinite one." Thomas F. Bergin 
Paul G. Haskell, Preface to Estates in Land and Future Interests 10-11 (2d ed. 1984).
 {¶ 25} These ceremonial practices demonstrated not only the transferor's conveyance of a right of possession but also the transferee's exercise of the right by taking possession of the land. The same must be shown today. The landlord's act may consist of delivery of the key to the door of a rental apartment. The tenant's act may merely be unlocking the door to go inside. Absent either, however, no tenancy is created. And, absent a tenancy, there can be no claim for breach of a lease agreement creating a tenancy.
 {¶ 26} R.C. 5321.16(B) provides: "Upon termination of a rental agreement any property or money held by the landlord as a security deposit may be applied to the payment of past due rent and to the payment of the amount of damages that the landlord has suffered by reason of the tenant's noncompliance with . . . the rental agreement." However, absent an enforceable rental agreement, that section has no application. Kimmiev. Tillimon (1990), 60 Ohio App.3d 478.
 {¶ 27} The trial court found that Holeman breached the terms of his lease agreement with Kanistros, and the court's judgment and damage award was clearly fashioned to make Kanistros whole again for her losses arising from the breach. However, because possession of the premises was not delivered by Kanistros to Holeman, who therefore could exercise no right of possession he had obtained, no tenancy resulted from the lease agreement. Holeman therefore could not fail to perform any duty he owed Kanistros under a lease agreement. And, absent such a failure there can be no breach which is actionable.
 {¶ 28} Implicit in the trial court's holding is a finding that the parties agreed that Holeman would execute a lease and that Kanistros would, in consideration of Holeman's payment of a month's rent, hold the property for him and not rent it to other persons before the lease was signed. We have held that the payment can then represent earnest money that may be forfeited as liquidated damages to the landlord if the prospective tenant does not perform, so long as the agreement which was made so provides. Garden Woods Apartments v. Hartman. However, absent the earnest money provision, and if the payment instead represents a security deposit contemplated by the uncompleted lease agreement, the landlord's right to the money remains contingent on the full completion of the agreement. White v. Boyd (Nov. 24, 1993), Montgomery App. No. 13757. Full completion requires the tenant's possession of the premises, which is itself contingent on the landlord giving the tenant a right of possession.
 {¶ 29} Kanistros testified that when Holeman orally agreed to sign a written contract of lease he said: "I'll give you a deposit check on it." (T. 5). She referred to the payment as a "deposit" several additional times. (T. pp. 6, 8, 11). Kanistros testified that she eventually negotiated Holeman's check after and because he breached their oral agreement. (T. p. 11). Kanistros repeated that her claim was not one over breach of the lease but because Holeman "changed his mind" and failed to sign the written contract of lease as he had promised to do. (T. p. 22).
 {¶ 30} The trial court referred in its opinion to the check Holeman gave Kanistros as a "security deposit." That reference is not so much a finding that rejects Kanistros's earnest money claim as it a reference consistent with the court's observation that "[t]he bottom line (question) is whether or not under these facts and circumstances there was an enforceable lease or not." (T. p. 21). The court erred when it found that a lease existed. Nevertheless, its implicit finding that the payment was earnest money is supported by Kanistros's testimony, and the award of damages the court made is consistent with its earnest money finding.
 {¶ 31} "While an appellate court may decide an issue on grounds different from those determined by the trial court, the evidentiary basis upon which the court of appeals decides a legal issue must have been adduced before the trial court and have been made a part of the record thereof." State v. Peagler (1996), 76 Ohio St.3d 496, paragraph one of the syllabus. The evidentiary basis supporting Kanistros's earnest money claim was fully adduced in the small claims proceeding. Therefore, we may affirm the trial court's judgment because the relief granted is consistent with the earnest money finding of the court, notwithstanding our finding that the trial court erred when it found a breach of a lease agreement.
 {¶ 32} The first assignment of error is overruled.
 {¶ 33} Second Assignment of error
 {¶ 34} "The trial court erred as a matter of law because it awarded appellee damages where she failed to reasonably mitigate such damages, as she is required to by law."
 {¶ 35} It is a fundamental principle of the law of damages that one who is injured in his or her person or property by a wrongful act or omission, whether as a tort or a breach of contract, must use reasonable care to avoid loss and minimize the damages resulting. Maloney v. GeneralTire Sales, Inc. (1973), 34 Ohio App.2d 177. A plaintiff is not permitted to remain idle and thus enhance its damages; however, failure to mitigate does not necessarily result in non-recovery. ABB, Inc. v.Banfi Products, Inc. (1991), 71 Ohio App.3d 630.
 {¶ 36} In an action for breach of contract, those damages that a plaintiff could have avoided with reasonable effort and without undue risk or expense cannot be charged against a defendant; to that extent, a plaintiff has a duty to mitigate damages. Chandler v. General MotorsAcceptance Corp. (1980), 68 Ohio App.2d 30. Because penalties for breach are unenforceable, even liquidated damages provisions are subject to a duty to mitigate, and the plaintiff is then due only the actual damages suffered. USS Great Lakes Fleet, Inc. v. Spitzer Great LakesLtd. (1993), 85 Ohio App.3d 737.
 {¶ 37} The burden to demonstrate a plaintiff's failure to discharge his or her duty to mitigate is on the defendant against whom the damage claim is made. Holeman offered no evidence, and indeed made no claim, that Kanistros had failed to mitigate her damages. That failure waives his right to raise the issue for the first time on appeal. Further, and in any event, Kanistros's testimony that she put out a "For Rent" sign the day after she received Holeman's letter, coupled with her testimony that, in her experience as a landlord any other efforts to advertise would be unavailing during the holiday season, shows that she did not fail to mitigate.
 {¶ 38} The second assignment of error is overruled.
 Conclusion {¶ 39} Having overruled the assignments of error presented, we will affirm the judgment from which the appeal was taken.
Wolff, J. and Fain, J., concur.