[Cite as *McNelly v. Conde*, 2021-Ohio-146.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STEPHANIE J. MCNELLY | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 28790 |
| | : | |
| v. | : | Trial Court Case No. CVI1900091 |
| | : | |
| IVAN CONDE | : | (Civil Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 22nd day of January, 2021.

. . . . . . . . . . .

STEPHANIE J. MCNELLY, 927 Henley Court, Vandalia, Ohio 45377
    Plaintiff-Appellee, Pro Se

CHRISTOPHER C. GREEN, Atty. Reg. No. 0077072, 130 West Second Street, Suite 830, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-Appellant, Ivan Conde, appeals from a small claims judgment of $1,601.30 in favor of Plaintiff-Appellee, Stephanie J. McNelly. According to Conde, the trial court erred in finding that an oral contract existed and was breached, in finding that the parties' subsequent contract lacked consideration, and in admitting parol evidence. In addition, Conde argues that the damages award was against the manifest weight of the evidence.

**{¶ 2}** For the reasons stated below, we find no error on the trial court's part. Accordingly, the judgment of the trial court will be affirmed.

I. Facts and Course of Proceedings

**{¶ 3}** Before we discuss the facts, we note that McNelly failed to file a brief and did not respond to our show cause order. *See McNelly v. Conde*, 2d Dist. Montgomery No. 28790 (Oct. 8, 2020).

**{¶ 4}** Pursuant to App.R. 18(C), "[i]f an appellee fails to file the appellee's brief within the time provided by this rule, or within the time as extended, * * * in determining the appeal, the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action."

**{¶ 5}** We choose not to apply this rule, because Conde's statement of facts omits a number of relevant items. In addition, at trial, Conde did not dispute any of the facts to which McNelly testified; instead, he simply objected to the admission of parol evidence (which we will consider later). Furthermore, Conde's own testimony was very brief and did not dispute McNelly's version of events. We therefore will provide our own statement

of facts rather than relying on the facts recited in Conde's brief.

{¶ 6} This small claims action arose from a rental agreement between Conde and McNelly.   In August 2019, McNelly lived in Canton, Ohio, and accepted a job in Dayton, Ohio, that was to begin on October 14, 2019.   As a result, McNelly began looking for an apartment or duplex to rent in the Dayton area.   Transcript of Proceedings ("Tr.") p. 5.   On August 22, 2019, McNelly saw an ad for a three-bedroom, two-bath duplex located on Forrer Boulevard in Oakwood, Ohio.   The ad stated that the duplex had a reverse osmosis water system and granite countertops.   *Id.*; *see also* Complaint, p. 2.[1]

{¶ 7} Conde owned the duplex and lived next door.   Tr. p. 6.   McNelly called him about the duplex, and she said she was able to come to view it on the evening the ad was posted.   Tr. p. 5-6.   However, Conde said the duplex was then occupied, and he allowed McNelly instead to look at his own unit.   Conde represented that his duplex was a "mirror image" of the rental property, and McNelly agreed to lease it based on that representation. Tr. p. 7.   McNelly gave Conde a deposit of $1,050 (which was the monthly rent), plus a $250 pet deposit.   She then arranged for movers to take her furniture to the duplex on October 7, 2019.   Tr. p. 7 and 9, and Complaint p. 2.   Prior to the move, McNelly and Conde had numerous discussions about the progress of the rental, including some renovations that were being done.   *Id.*

{¶ 8} On October 7, 2019, the movers arrived at the duplex before McNelly and unloaded all her furniture.   Tr. p. 7.   When McNelly arrived, the apartment was filthy,

---

[1] As indicated, Conde did not dispute any of McNelly's testimony at trial.   Instead, he testified only about a document he prepared after McNelly told him the duplex was not habitable.   The trial court also indicated that it had read the complaint and understood it, and asked McNelly to expedite her testimony, given the small claims court setting. Tr. p. 3.   As a result, we will refer occasionally to the small claims complaint.

with water behind the walls, leakage, mold all over, and exposed wires in the kitchen and attic, which were a safety hazard.    Tr. p. 7, 9, and 20; Complaint, p. 2.

{¶ 9} McNelly had not signed a lease before moving in.   On the evening of October 7, 2019, McNelly told Conde that she could not live at the duplex because it was unsafe, and Conde asked her to meet him the next day.   Tr. p. 10-11.   After hunting for apartments in the morning, McNelly met Conde at 1:00 p.m. on October 8, 2019.   Tr. p. 11.   When they met, Conde shoved a lease in McNelly's face and told her she was going to sign it because she had agreed to rent the duplex for a year.   Tr. p. 10.   McNelly reiterated that the duplex was not livable and that she was not going to live there.   Tr. p. 11.

{¶ 10} After McNelly refused to sign the lease, Conde told her she had to get all her belongings out that day and refused to return her deposit.   Tr. p. 11.   When Conde stated that she had no way to move things out that day and would have to get movers, Conde wrote up the following contract:

Stephanie McNeely [sic] has decided to not move in to 328 Forrer as originally planned.   $1250.00 deposit will not be returned.   Stephanie McNeely [sic] has asked us to store Washer, Dryer, Treadmill and Infra Sauna in basement until/and no later than November 1st 2019.   Stephanie McNeely [sic] realizes we are not liable for said stored items in basement. Stephanie McNeely [sic] has also asked us to store her Queen size bed located in middle bedroom upstairs.   Stephanie McNeely [sic] realizes we are not liable for bed.   Bed can be stored until and no later than November 1st 2019.   Stephanie McNeely [sic] will also need us to store Trager grill in

garage until and no later than November 1st 2019. She realizes we are not liable for Trager grill. She, Stephanie McNeely [sic], agrees to physically be out of home and return keys by 10/9/19 at 11 am.

Plaintiff's Ex. 1, p. 1.

{¶ 11} After signing Ex. 1, McNelly rented two storage units and hired movers at an additional cost of $1,000 to move her property to the storage units.[2] She also had to pay movers again to take her property to her new apartment in November 2019. Tr. p. 11-12 and 18. All of McNelly's belongings were out of the duplex by October 11, 2019. Tr. p. 17. When McNelly again asked Conde to return her deposit, he refused. Tr. p. 12.

{¶ 12} On November 1, 2019, McNelly filed a small claims complaint in Oakwood Municipal Court against Conde. She attached various documents to the complaint, including the following: Ex. 1; numerous photos of the duplex; bills for storage, hotel, and additional movers; and the lease to the new apartment that she rented.

{¶ 13} The municipal court tried the case, with the only witnesses being McNelly and Conde. After hearing the evidence, the court filed a judgment entry concluding that a valid contract had existed for the rental, but that it had been uninhabitable due to the fault of Conde. The court further held that Ex. 1 was not valid due to lack of consideration. The court, therefore, awarded McNelly $1,601.30, which included the $1,300 deposit plus reasonable damages related to McNelly's first hotel stay. The court did not award McNelly damages for a separate hotel stay or for any additional moving costs.

{¶ 14} After the judgment entry was filed, Conde asked the trial court to file

---

[2] The original movers cost around $1,700. Complaint, p. 2.

separate findings of fact and conclusions of law. The court overruled the motion on April 16, 2020. Conde then timely appealed from the judgment.

## II. Contractual Issues

{¶ 15} Conde has raised four assignments of error as support for his appeal. Because the first two assignments of error are interrelated, we will consider them together. These assignments of error, respectively, are:

The Trial Court Erred When It Held That the Contract Between the Parties Lacked Consideration.

The Trial Court Erred When It Held That There Existed a Valid Oral Contract That for Which the Parties Could Not Execute.

{¶ 16} Under these assignments of error, Conde maintains that the trial court erred in finding that an oral agreement existed that the parties could not execute. According to Conde, a tenancy at will was created when McNelly moved in, and no periodic tenancy existed because McNelly did not pay any rent. As a result, either party was free to terminate the tenancy upon notice, which McNelly did on October 8, 2019. Based on this theory and McNelly's termination, Conde argues that the tenancy at will agreement no longer existed, and Conde was not bound under any law or contract; as a result, consideration existed for Conde's agreement to let McNelly store her property in exchange for retention of the $1,300 deposit.

{¶ 17} As indicated, the trial court found that a valid contract existed, but it also held that the parties could not execute the contract because the duplex was uninhabitable. The court therefore awarded McNelly a refund of her deposit ($1,300)

and also awarded her $301.30 to compensate for her four-day stay at a hotel.

**{¶ 18}** When appellate courts review judgments following bench trials, a presumption applies that the trial court's findings are correct. *Fed. Ins. Co. v. Fredericks*, 2015-Ohio-694, 29 N.E.3d 313, ¶ 21 (2d Dist.), citing *State ex rel. Petro v. Gold*, 166 Ohio App.3d 371, 2006-Ohio-943, 850 N.E.2d 1218, ¶ 81 (10th Dist.). Consequently, appellate courts may not substitute their judgment for that of trial courts and must affirm judgments that are "supported by some competent, credible evidence going to the essential elements of the case." (Citations omitted.) *Gold* at ¶ 81. As to questions of law like contract interpretation, appellate review is de novo. *PNC Bank, N.A. v. Springboro Med. Arts, Inc.*, 2015-Ohio-3386, 41 N.E.3d 145, ¶ 15 (2d Dist.).

**{¶ 19}** Appellate courts are also "mindful that in a bench trial, 'the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Emswiler v. Bodey*, 2d Dist. Champaign No. 2012-CA-3, 2012-Ohio-5533, ¶ 44, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Consequently, " '[i]f the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment.' " *Seasons Coal Co.* at 80, fn.3, quoting 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191-192 (1978). *Accord Emswiler* at ¶ 44.

**{¶ 20}** Under the law, "[a] tenancy is possession or occupancy of land by right or title, especially under a lease, which is a contract by which an owner or rightful possessor of real property conveys the right to use and occupy the property in exchange for

consideration, usually rent." *Kanistros v. Holeman*, 2d Dist. Montgomery No. 20528, 2005-Ohio-660, ¶ 15. For a lease to be enforceable in Ohio, it must be reduced to writing and be signed by the tenant. *Id.* at ¶ 16, citing R.C. 1335.04 and R.C. 1335.05. However, the necessity of a written agreement may be relieved and an enforceable contract can be found where a tenant is given possession of the premises. *Id.* at ¶ 22 and 25.

{¶ 21} "The additional requirement that the tenant actually exercise his right of possession conveyed by the landlord is, like other features of the law of real property, rooted in ancient practice. In this instance, the practice is livery of seisin." *Id.* at ¶ 21. As explained in *Kanistros*:

> "Livery" is the delivery of the possession of real property. "Livery of seisin" was "the ceremony by which a grantor conveyed land to a grantee. Livery of seisin involved either (1) going on the land and having the grantor symbolically deliver possession of the land to the grantee by handing over a twig, a clod of dirt, or a piece of turf (called *livery in deed*) or (2) going within sight of the land and having the grantor tell the grantee that possession was being given, followed by the grantee's enter[ing] the land (called *livery in law*)." Black's Law Dictionary, Seventh Ed.

(Emphasis sic.) *Kanistros* at ¶ 22. In modern times, "[t]he landlord's act may consist of delivery of the key to the door of a rental apartment. The tenant's act may merely be unlocking the door to go inside." *Id.* at ¶ 25.

{¶ 22} In the case before us, no written agreement was ever signed. Instead, the parties orally agreed that McNelly would rent the duplex for $1,050 per month, for one

year.   Tr. p. 10 and 17.   Even though McNelly gave Conde a security deposit of $1,050, plus $250 for a pet deposit, that would still make the oral agreement unenforceable.   Tr. p. 10 and 17.   However, Conde also gave McNelly the keys to the duplex and she moved her furniture into the premises.

{¶ 23} In view of these facts and the applicable law, the trial court did not err in concluding that the parties entered into an enforceable contract.   Consequently, McNelly would have been entitled to stay in the apartment for the agreed-upon term of one year and she would have been obligated to pay Conde the monthly rent of $1,050 for that period of time.   And Conde would have been entitled, in a breach of contract action, to enforce the contract.   *E.g., Kanistros* at ¶ 15.

{¶ 24} As indicated, however, the trial court held that the contract could not be executed because the duplex was uninhabitable.   After reviewing the evidence, we agree; Conde breached the contract by failing to provide a habitable premises.

{¶ 25} R.C. 5321.04(A) provides, in pertinent part, that:

(A) A landlord who is a party to a rental agreement shall do all of the following:

(1) Comply with the requirements of all applicable building, housing, health, and safety codes that materially affect health and safety;

(2) Make all repairs and do whatever is reasonably necessary to put and keep the premises in a fit and habitable condition;

* * *

(4) Maintain in good and safe working order and condition all electrical, plumbing, sanitary, heating, ventilating, and air conditioning

fixtures and appliances, and elevators, supplied or required to be supplied by the landlord.

**{¶ 26}** The obligations imposed by R.C. 5123.04(A)(2) "are incorporated by operation of law into a rental agreement. A substantial failure to comply with them constitutes a breach by the landlord of the rental agreement, for which the tenant may maintain an action for breach of contract." *Tellema v. Liette*, 2d Dist. Miami No. 92-CA-14, 1993 WL 79270, *1 (March 11, 1993). "The landlord is required to 'do whatever is reasonably necessary' to make the premises fit and habitable. Reasonableness is to be determined from all the facts and circumstances." *Id*. at *2.

**{¶ 27}** At trial, Conde had an opportunity to present any evidence that he wished. However, his only testimony was that he wrote the subsequent contract (Plaintiff's Ex. 1), which stated that McNelly paid him the deposit, that McNelly did not pay him any rent, and that he did not tell McNelly that she had to remove her property before November 1. Tr. p. 19-20. Conde said nothing about the condition of the premises, and the undisputed testimony from McNelly was that the duplex was not habitable because it had water behind the walls, leakage, mold all over, and exposed wires, such that no one could live there safely. Tr. p. 22. Consequently, the evidence established that Conde breached the contract by failing to provide McNelly with a habitable premises.

**{¶ 28}** Furthermore, " '[t]he fraud against which the courts grant relief, notwithstanding the statute of frauds, consists in a refusal to perform an agreement upon the faith of which the plaintiff has been misled to his injury or made some irretrievable change of position, especially where the defendant has secured an *unconscionable advantage*, and not in the mere moral wrong involved in the refusal to perform a contract

which by reason of the statute cannot be enforced. When one party induces another, on the faith of a parol contract, to place himself in a worse situation than he could have been if no agreement existed, and especially if the former derives a *benefit* therefrom at the expense of the latter, and avails himself of his legal advantage, he is guilty of fraud, and uses the statute for a purpose not intended – the injury of another – for his own profit.' " (Emphasis sic.) *Manifold v. Schuster*, 67 Ohio App.3d 251, 254-255, 586 N.E.2d 1142 (4th Dist.1990), quoting *Delfino v. Paul Davies Chevrolet, Inc.*, 2 Ohio St.2d 282, 287-288, 209 N.E.2d 194 (1965).

{¶ 29} As indicated, McNelly's testimony was undisputed on the relevant points. Relying on the promises that Conde made concerning the apartment (including that it was being remodeled and was the "mirror image" of the apartment he showed her), McNelly incurred substantial expense in moving her furniture into the duplex, only to realize afterward that it was not habitable. She then had to arrange for other movers to come and remove her property, and also had to look for another rental. McNelly clearly was misled and made an irreversible change in position. Accordingly, the trial court did not err in concluding that a valid contract existed, and that it could not be maintained due to Conde's breach.

{¶ 30} For the same reasons, the subsequent contract that was signed on October 8 (Ex. 1) lacked consideration. " 'A contract is generally defined as a promise, or a set of promises, actionable upon breach. Essential elements of a contract include an offer, acceptance, contractual capacity, consideration (the bargained for legal benefit and/or detriment), a manifestation of mutual assent and legality of object and of consideration.' " *Kostelnik v. Helper*, 96 Ohio St.3d 1, 2002-Ohio-2985, 770 N.E.2d 58, ¶ 16, quoting

*Perlmuter Printing Co. v. Strome, Inc.*, 436 F.Supp. 409, 414 (N.D.Ohio 1976).

{¶ 31} "Consideration, meaning that which is bargained for and given in exchange for a promise, is a necessary element of a binding contract, and the absence of consideration precludes the formation of a valid contract." *Harvest Land Co-Op, Inc. v. Hora*, 2d Dist. Montgomery No. 25068, 2012-Ohio-5915, ¶ 14, citing 17 Ohio Jurisprudence 3d, Contracts, Section 39. "Consideration may consist of either a detriment to the promisee or a benefit to the promisor." *Brads v. First Baptist Church of Germantown, Ohio*, 89 Ohio App.3d 328, 336, 624 N.E.2d 737 (2d Dist.1993), citing *Software Clearing House, Inc. v. Intrak, Inc.*, 66 Ohio App.3d 163, 583 N.E.2d 1056 (1st DIst.1990). "A benefit may consist of some right, interest or profit accruing to the promisor, while a detriment may consist of some forbearance, loss or responsibility given, suffered or undertaken by the promisee." *Id.*, citing 17 Ohio Jurisprudence 3d. Contracts, Section 56 at 488-489 (1980). The burden of proving either failure of consideration or want of consideration is on the party asserting it. *Ohio Loan & Discount Co. v. Tyarks*, 173 Ohio St. 564, 568, 184 N.E.2d 374 (1962).

{¶ 32} In the case before us, Conde had already breached the lease agreement by failing to provide a habitable premises. McNelly, therefore, was entitled to have her deposit returned. Attempting to charge her the same amount for storage (the need for which had been improperly caused by Conde's breach) reveals that no consideration for the second contract (Ex. 1) existed. Accordingly, the trial court did not err in rejecting Ex. 1 as a viable contract.

{¶ 33} Based on the preceding discussion, the First and Second Assignments of Error are overruled.

### III. Parol Evidence

**{¶ 34}** Conde's Third Assignment of Error states that:

> The Trial Court Erred When It Considered Parol Evidence When There was a Valid Contract Between the Parties.

**{¶ 35}** Under this assignment of error, Conde contends that Ex. 1 was a valid contract and did not lack consideration. Therefore, according to Conte, the trial court erred in considering parol evidence (discussions and conditions that occurred before the parties signed Ex. 1). Again, we disagree.

**{¶ 36}** "The parol evidence rule states that 'absent fraud, mistake or other invalidating cause, the parties' final written integration of their agreement may not be varied, contradicted or supplemented by evidence of prior or contemporaneous oral agreements, or prior written agreements.' " *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000), quoting 11 Williston on Contracts, Section 33:4 at 569-570 (4 Ed.1999). "Despite its name, the parol evidence rule is not a rule of evidence, nor is it a rule of interpretation or construction." *Id.*, citing *Charles A. Burton, Inc. v. Durkee,* 158 Ohio St. 313, 324, 109 N.E.2d 265 (1952). Instead, it is "a rule of substantive law which, when applicable, defines the limits of a contract." *Charles A. Burton* at paragraph one of the syllabus.

**{¶ 37}** The trial court first admitted evidence of surrounding circumstances in connection with the oral lease agreement. That was appropriate, because McNelly alleged fraud in connection with the agreement. Specifically, McNelly claimed she was induced into renting the duplex based on misrepresentations in the advertisement and by

Conde when he showed her his own duplex that was allegedly a "mirror-image" of the one she was going to rent.   Complaint, p. 2.   Instead, when McNelly arrived and took possession, the apartment was uninhabitable.

{¶ 38} R.C. 5321.14(B) provides that "[w]hen it is claimed or appears to the court that the rental agreement, or any clause thereof, may be unconscionable, the parties shall be afforded a reasonable opportunity to present evidence as to its setting, purpose, and effect to aid the court in making the determination."   As a result, the trial court properly allowed evidence surrounding the formation of the rental agreement.

{¶ 39} As an additional matter, in deciding whether Conde had done everything reasonable and necessary to make the premises habitable, the trial court was to consider "all the facts and circumstances."   *Tellema*, 2d Dist. Miami No. 92-CA-14, 1993 WL 79270, at *2.

{¶ 40} The same analysis also applies to the second agreement (Ex. 1), which has already been held to have lacked consideration.   Because there was no consideration, the trial court did not err in admitting parol evidence.   And, even if this had been otherwise, the parol evidence rule does not prohibit evidence of other agreements where fraud or other invalidating causes exist.

{¶ 41} Accordingly, the trial court did not err in allowing evidence of the facts surrounding the formation of the agreements.   The Third Assignment of Error, therefore, is overruled.


IV.   Manifest Weight Challenge

{¶ 42} Conde's Fourth Assignment of Error states that:

The Trial Court's Award of Damages Was Against the Manifest Weight of the Evidence.

**{¶ 43}** Under this assignment of error, Conde asserts that the trial court's award of damages for the cost of McNelly's hotel stay was unreasonable and was against the manifest weight of the evidence. As indicated, the court awarded McNelly $301.30, which covered the cost of four nights' stay in a local hotel.

**{¶ 44}** In *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, 972 N.E.2d 517, the Supreme Court of Ohio held that the manifest weight standards outlined in *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997), should apply to civil cases. *Id.* at ¶ 17. Consequently, "[w]hen a [judgment] is challenged on appeal as being against the weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact 'clearly lost its way and created such a manifest miscarriage of justice that the [judgment] must be reversed and a new trial ordered.' " *State v. Hill*, 2d Dist. Montgomery No. 25172, 2013-Ohio-717, ¶ 8, quoting *Thompkins* at 387. "A judgment should be reversed as being against the manifest weight of the evidence 'only in the exceptional case in which the evidence weighs heavily against the [judgment].' " *Id.*, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). This is not such an exceptional case.

**{¶ 45}** Claimants seeking recovery for breach of contract must show that the breach caused damages, and the amount is required to correspond with the injuries the breach caused. *Textron Fin. Corp. v. Nationwide Mut. Ins. Co.*, 115 Ohio App.3d 137, 144, 684 N.E.2d 1261 (9th Dist.1996). Furthermore, the amount awarded must be

established with reasonable certainty.   *Id.*

{¶ 46} According to the evidence, Conde was well aware that McNelly was moving to the area to take a job, and he reasonably could have anticipated that his breach of contract would leave her with no place to stay.   Awarding damages for a four-night hotel stay was not unreasonable.   These damages were also significantly less than McNelly claimed (among other things, an additional hotel stay the following week, moving costs, and rental fees for a storage unit until she could move into another rental property).   As a result, we cannot find that the trial court's damages decision was against the manifest weight of the evidence.   Accordingly, the Fourth Assignment of Error is overruled.


V.   Conclusion

{¶ 47} All of Conde's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .


DONOVAN, J. and HALL, J., concur.




Copies sent to:

Stephanie J. McNelly
Christopher C. Green
Hon. Greg Gantt, Acting Judge